OPINION OF THE COURT
Phillip R. Rumsey, J.
Petitioner commenced this CPLR article 78 proceeding seeking judgment pursuant to Public Officers Law article 6 (Freedom of Information Law, or FOIL) compelling respondent Ithaca City School District (referred to herein as ICSD) to produce records and awarding attorney’s fees and litigation costs. On September 29, 2015, petitioner requested, pursuant to FOIL, that ICSD provide all records regarding an appearance that Bassem Tamimi made before third graders at the Beverly J. Martin Elementary School (BJM) on September 18, 2015. On December 1, 2015, ICSD completed its FOIL response to petitioner. On December 2, 2015, petitioner filed a second FOIL request and an administrative appeal of ICSD’s response to his first FOIL request. On December 16, 2015, petitioner’s appeal was partially granted and ICSD provided him with additional records. ICSD completed its response to the second *1093 FOIL request on January 12, 2016. The administrative appeal that petitioner filed with respect to the second FOIL response was denied on February 3, 2016. Petitioner thereafter commenced this proceeding.
ICSD provided petitioner with a partial transcript of two video recordings of the event that had been made by Mary Anne Grady Flores, who is not an employee of ICSD.[1] Petitioner raises two objections with respect to the video recordings of the event: (1) he asserts that he is entitled to copies of the video recordings, not merely transcripts thereof; and (2) he contends that the FOIL response shows that Ariel Gold provided two additional video recordings to ICSD that it has not disclosed or accounted for.
Respondent determined that the video recordings made by Flores were exempt from disclosure pursuant to Public Officers Law § 87 (2) (a), as being records exempted from disclosure by federal statute, namely, the Family Educational Rights and Privacy Act, known as FERPA (20 USC § 1232g), on the basis that the visual and audio portions of the recordings made it possible for a person in the BJM community to identify students participating in the question and answer session.
“For the purposes of this section, the term ‘education records’ means, except as may be provided otherwise in subparagraph (B), those records, files, documents, and other materials which—
“(i) contain information directly related to a student; and
“(ii) are maintained by an educational agency or institution or by a person acting for such agency or institution.” (20 USC § 1232g [a] [4] [A].)
ICSD asserts that the video recordings are “educational records” on the basis that when they are in the custody of ICSD they are “maintained by an educational agency.”[2] The mere fact that information may be held by an educational agency is insufficient to make it an educational record.
*1094 “[T]he United States Supreme Court has suggested a very narrow reading of the term [educational records], limiting it to permanent records deposited with a single central custodian. Owasso Ind. School Dist. v. Falvo, 534 U.S. 426, 435-36, 122 S.Ct. 934, 151 L.Ed.2d 896 (2002). See also Bd. Ed. Toledo City School Dist. v. Horen, 2010 WL 3522373 (N.D.Ohio Sept.8, 2010); S.A. v. Tulare County Office of Ed., 2009 WL 3126322 (E.D.Cal. Sept.24, 2009).” (Weston ex rel. C.S. v Kansas City, Mo. Sch. Dist., 2011 WL 5513207, *2, 2011 US Dist LEXIS 130422, *4 [WD Mo, Nov. 20, 2011, No. 07-0229-CV-W-HFS].)
To constitute an educational record, information must relate to an individual student’s educational performance (see Culbert v City of New York, 254 AD2d 385, 387 [1998]; Matter of Rome City School Dist. v Grifasi, 10 Misc 3d 1034, 1037 [2005], citing Culbert v City of New York), and must be kept in the student’s individual file by a central registrar or custodian (see S.A. ex rel L.A. v Tulare County Off. of Educ., 2009 WL 3126322, *7, 2009 US Dist LEXIS 88007, *19 [ED Cal, Sept. 24, 2009, No. CV F 08-1215 LJO GSA]; Board of Educ. of the Toledo City Sch. Dist. v Horen, 2010 WL 3522373, *25-26, 2010 US Dist LEXIS 98231, *76-83 [ND Ohio, Sept. 8, 2010, No. 3:07CV3631]).
ICSD has not alleged that the video recordings are related in any way to the educational performance of the students depicted, nor that copies of the video recordings are maintained with, referenced in, or indexed to, any individual student files maintained by the central registrar or custodian of student records. It also bears noting that ICSD’s production of a redacted transcript of the video recorded by Flores evinces an understanding that it was not an “educational record” under FERPA, for had it been considered an educational record, it would have been entirely exempt from disclosure under FOIL (see e.g. Matter of MacKenzie v Seiden, 106 AD3d 1140, 1143 [2013] [a document exempt from production pursuant to state or federal statute is “categorically excluded in its entirety and not subject to redaction or deletion!,) . . . even though redaction might remove all details which tend to identify the victim” (internal *1095 quotation marks and citation omitted)]). Accordingly, the video recordings are not educational records for purposes of FERPA.[3]
Petitioner has consented to redaction of the video recordings to protect the identity of the students involved (see reply mem of law, dated July 8, 2016 at 10, 17; see also reply mem of law, dated July 8, 2016 at 13-17 [suggested scope and methods of redaction]). The court also determines that redaction is necessary and appropriate in this case, regardless of the applicability of FERPA, to protect the identities of the students involved in the event. Thus, all video recordings produced shall be redacted to protect the identity of the students depicted by “blurring” their faces and eliminating any reference to names or other factual information that would directly identify a student, and student voices may be slightly muffled or obscured, provided that the content of their speech remains clearly audible.
A public agency generally may not impose its cost of complying with a FOIL request upon the requesting party; however, it may recover any costs directly associated with redaction of responsive records (see Public Officers Law § 87 [1] [b] [iii]; [c]; Matter of Brown v Goord, 45 AD3d 930 [2007], lv dismissed 10 NY3d 796 [2008]). Accordingly, ICSD shall provide petitioner with the estimated cost of redacting the relevant video recordings prior to having the redaction completed, and need only proceed with redaction upon receiving advance payment of the anticipated cost from petitioner. Upon delivery of any redacted video recordings to petitioner, adjustment shall be made to the extent that the actual cost of redaction varies from the estimated cost (a refund to, or additional payment by, petitioner).
It bears emphasizing that respondent created the possibility that video recordings depicting students would be published, not only by permitting the event to occur, but also by allowing *1096 individuals whom it did not employ, i.e., Gold and Flores, to be present and record the event. The risk that unredacted video recordings depicting individual students would be published existed from the moment that the recordings were made by individuals not under ICSD’s control and, in fact, portions of the video recordings have apparently been published and made available for public viewing. Thus, disclosure of video recordings redacted as directed herein causes no further harm to any of the innocent students involved.
The FOIL response contains a copy of an email from Ariel Gold to Brook Burnett, the teacher involved, and to Susan Eschbach, Principal at BJM, dated September 18, 2015, which attaches two videos that Gold took during the presentation using her phone (attached in electronic format as “.MOV” files). The FOIL response further shows that Eschbach was unable to open the attachments and that ICSD staff subsequently sought additional copies of the video recordings from Gold. However, ICSD does not deny that it has the video files that Gold originally provided, does not state whether she provided further copies, nor indicate whether it has been successful in viewing the Gold video recordings. Accordingly, ICSD shall submit an affidavit or affidavits from an employee or employees with personal knowledge stating: (1) when it received copies of the .MOV video files from Gold; (2) whether it continues to possess such files and, if not, when and how they were destroyed or deleted; (3) if copies were provided to any person or party by ICSD, the identity of any such recipient, the date or dates on which the files were sent, and the mechanism of the transfer; (4) whether attempts were made to open and view the files after Eschbach’s unsuccessful initial attempt to view them; and (5) whether such further attempts, if any, were successful. If ICSD was successful in opening and viewing the files, it shall provide petitioner with copies of the video recordings redacted in the same manner as directed above. If it has video files from Gold that it has been unable to open, it will provide copies to the court for further review and determination.
ICSD received numerous unsolicited written comments which they produced in response to petitioner’s FOIL request; however, the names of the individuals submitting the comments were redacted on the basis that disclosure would constitute an unwarranted invasion of personal privacy. Petitioner objects to the redaction and asserts that he is entitled to receive the names of the individuals who submitted comments to ICSD board of education members and personnel.
*1097 “FOIL expresses this State’s strong commitment to open government and public accountability and imposes a broad standard of disclosure upon the State and its agencies. To this end, FOIL provides that all records of a public agency are presumptively open to public inspection and copying unless otherwise specifically exempted. FOIL expressly provides that an agency that has denied disclosure on the basis of an exemption shall in all proceedings have the burden of proving entitlement to the exemption. Thus, the standard of review on a CPLR article 78 proceeding challenging an agency’s denial of a FOIL request is much more stringent than the lenient standard generally applicable to CPLR article 78 review of agency actions. A court is to presume that all records are open, and it must construe the statutory exemptions narrowly. The agency is required to articulate a particularized and specific justification for denying access. Con-clusory assertions that certain records fall within a statutory exemption are not sufficient; evidentiary support is needed.” (Matter of Berger v New York City Dept. of Health & Mental Hygiene, 137 AD3d 904, 906 [2016], lv denied 27 NY3d 910 [2016] [internal quotation marks and citation omitted].)
ICSD has failed to meet its burden with respect to the assertion that disclosure of the names of the authors of the written comments, or other information identifying the authors, constitutes an unwarranted invasion of personal privacy. In asserting that the identities of the authors of the comments were exempt from disclosure, ICSD relied on the definition of an unwarranted invasion of personal property as “disclosure of information of a personal nature reported in confidence to an agency and not relevant to the . . . work of the agency” (Public Officers Law § 89 [2] [b] [v]). Moreover, it bears noting that ICSD did not uniformly apply the exemption that it relied upon, inasmuch as it disclosed the names of the authors of some comments but not others.
Although the identity of a person who complains about the performance of a public employee may be exempt from disclosure, the identities of those who make comments that would be expected to be made at a public hearing are not exempt from disclosure (see Comm on Open Govt OML-AO-05223 [2011]; Comm on Open Govt FOIL-AO-18743 [2011]). *1098 The majority of the comments disclosed are not in the nature of complaints regarding the performance of ICSD employees; rather, they are comments on a matter of public interest for which ICSD has failed to demonstrate that the authors had any expectation of privacy. Similarly, even assuming that the Tamimi event is, or was, a controversial issue, ICSD failed to make any allegations establishing the level of the disagreement and “the degree to which an ordinary person of reasonable sensibilities would react to disclosure of [the] comments coupled with the identity of the person making the comments” (id.). Thus, the names, and other identifying information about the authors of the various comments, are not exempt from disclosure under FOIL, with the following exception. One email string includes information concerning a student who was at the presentation which could be construed as a complaint about ICSD personnel, namely Burnett, and, therefore, the identity of the author is exempt from disclosure. Thus, ICSD shall provide petitioner with copies of all documents that it produced consisting of correspondence or communication on the Tamimi event without redaction of author name or identifying information, except the email string involving Rachel Valenzano, Esch-bach and an unidentified parent between the dates of September 22, 2015 and October 6, 2015.
Petitioner also objects to documents that ICSD either redacted or did not produce in reliance upon the intra-agency exemption. Although ICSD identified such documents and set forth the basis of the claimed exemption for each, the records have not been provided to the court which, therefore, is unable to determine “whether [the] withheld materials fall within the scope of those asserted exemptions” (Matter of Hearst Corp. v New York State Police, 132 AD3d 1128, 1130 [2015], citing Matter of Xerox Corp. v Town of Webster, 65 NY2d 131, 133 [1985] [although reports were, in principle, exempt from disclosure as intra-agency materials, the record contained “only the barest description of them” thereby requiring in camera review by the trial court]; Matter of Rose v Albany County Dist. Attorney’s Off., 111 AD3d 1123, 1126 [2013]; Matter of DJL Rest. Corp. v Department of Bldgs. of City of N.Y., 273 AD2d 167, 169 [2000]; see also Matter of Whitfield v Bailey, 80 AD3d 417, 419 [2011]). Accordingly, ICSD shall provide the court with copies of unre-dacted documents described in the following subparagraphs of the affidavit of Dr. Luvelle Brown, sworn to June 21, 2016 (the Brown aff): (9) iv, vii, viii, xiv, xviii, xxii, xxxi, xxxii, and xxxiv; (12) i-xiv; (19) v, ix, and x; and (20) i-xii.
*1099 The petition also seeks an award of attorney’s fees and litigation expenses. Petitioner is an attorney admitted to practice in New York who is self-represented in this proceeding. Accordingly, he is not entitled to an award of attorney’s fees and costs, and his request therefor is denied (see Village of Brockport v Calandra, 191 Misc 2d 718, 728 [2002], affd on other grounds 305 AD2d 1030 [2003], citing Kay v Ehrler, 499 US 432 [1991]; Falcone v Internal Revenue Serv., 714 F2d 646 [6th Cir 1983], cert denied 466 US 908 [1984]).
Based on the foregoing, ICSD shall do the following by October 24, 2016:
1. Provide petitioner with the estimated cost of redacting any video recordings of the event that it is capable of viewing.
2. File and serve an affidavit or affidavits regarding the video recordings provided by Gold and, if it has video recordings provided by Gold that it has been unable to open or view, submit copies thereof to the court.
3. Provide petitioner with copies of all documents that it produced consisting of correspondence or communication on the Tamimi event without redaction of author name or identifying information, except the email string involving Rachel Valenzano, Eschbach and an unidentified parent between the dates of September 22, 2015 and October 6, 2015.
4. Submit to the court for in camera review copies of unre-dacted documents described in the Brown affidavit, as itemized above.

. She was apparently present as a grandmother of one of the third grade students.

. ICSD’s argument that petitioner’s request for videos is academic, because he may be able to obtain them from other sources, is unavailing, inasmuch as ICSD does not aver, and petitioner does not admit, that he actually possesses copies of the relevant video recordings (cf. Matter of Fappiano v New York City Police Dept., 95 NY2d 738, 749 [2001]; Matter of Madeiros v New York State Educ. Dept., 133 AD3d 962, 965 [2015], lv granted 27 NY3d 903 [2016]; Matter of Khatibi v Weill, 8 AD3d 485 [2004]; Matter of McGhee v *1094 New York City Police Dept., 52 Misc 3d 1211[A], 2016 NY Slip Op 51112[U] [Sup Ct, NY County 2016]).

. Petitioner’s argument that copies of the video recordings must be provided even if they constitute educational records, on the basis that the contents of the recordings contain information already known to the school community, is unavailing. “FERPA does not protect information which might appear in school records but would also be ‘known by members of the school community through conversation and personal contact’ ” (Daniel S. v Board of Educ. of York Community High Sch., 152 F Supp 2d 949, 954 [ND Ill, 2001]). Although it is undisputed that it was well-known within the school community that the approximately 40 third grade students enrolled at BJM participated in the Tamimi event, the video recordings may contain statements made by individual students or other information that are not known to the school community generally.